# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 22-1708V

|  |  |
|---|---|
| MICHAEL BARNES, | Chief Special Master Corcoran |
| Petitioner, |  |
| v. | Filed: February 23, 2026 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |  |
| Respondent. |  |

*Paul R. Brazil, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Alyssa M. Petroff, U.S. Department of Justice, Washington, DC, for Respondent.*

**RULING ON ENTITLEMENT**[1]

On November 18, 2022, Michael Barnes filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a Table shoulder injury related to vaccine administration ("SIRVA") following his receipt of influenza ("flu") and pneumococcal vaccines on November 6, 2021. Petition at 1.

For the reasons set forth below, and after holding an expedited hearing on the disputed issue, I find that Petitioner is entitled to compensation for a SIRVA Table injury.

---

[1] Because this ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.      Procedural History

On January 26, 2023, this case was assigned to the Special Processing Unit of the Office of Special Masters. ECF No. 8. The parties attempted informal settlement negotiations, but on December 15, 2023, Petitioner reported that they had reached an impasse. ECF No. 17. On June 27, 2024, Respondent filed a Rule 4(c) Report opposing compensation. ECF No. 20 ("Rule 4(c) Report").

On October 7, 2024, I set this matter on a briefing schedule to address the issue raised in Respondent's Rule 4(c) Report. Petitioner filed a brief in support of entitlement on November 21, 2024. ECF No. 24 ("Pet'r Br."). Respondent filed a response brief on January 6, 2025. ECF No. 25 ("Resp't Br."). Petitioner did not file a reply.

The parties were subsequently notified that I would resolve this dispute via an expedited hearing, which took place on February 20, 2026. ECF No. 29. After considering the arguments of both sides and questioning the parties in regard to the disputed issue, I issued an oral ruling finding Petitioner entitled to compensation. This Ruling memorializes those findings/determinations.

## II.      Relevant Evidence

Petitioner received both the flu and the pneumococcal vaccine in his right arm on November 6, 2021. Ex. 1 at 2-6. Petitioner was 66 years old at the time of vaccination and in good health, with no history of right shoulder pain or dysfunction.

On December 9, 2021, Petitioner saw his primary care physician ("PCP"), Dr. James Shetlar. Ex. 2 at 58. Dr. Shetlar noted that Petitioner "got a significant reaction" to the pneumococcal vaccine he received the month prior. *Id.* As relevant to onset, Petitioner reported that "his arm has been painful for the last month." *Id.*

Petitioner saw Dr. Shetlar again on February 4, 2022 for "pain in the right upper arm." *Id.* Petitioner again attributed his right arm pain to the pneumococcal vaccine, but also stated that he had received another vaccine in the left arm and now had pain in both arms.[3] *Id.* Dr. Shetlar was "not sure" why Petitioner was having pain, but suggested bursitis or trauma from the vaccine injection. *Id.* Dr. Shetlar took x-rays, which were normal except for narrowing of the right AC joint. Ex. 2 at 10. The x-ray report stated that Petitioner had right upper arm pain "since vaccine on November 5, 2021."[4] *Id.*

---

[3] The record does not contain any additional vaccination records.

[4] References to November 5, 2021 as the vaccination date in Petitioner's records appear to be in error.

On March 8, 2022, Petitioner saw orthopedist Dr. Pervez Yusaf. Ex. 3 at 5. Dr. Yusaf stated that Petitioner had "bilateral shoulder bursitises" and had "noticed the pain around 5 months ago." Ex. 3 at 15. Again, Petitioner described first receiving a vaccine on the right side in November and then later, "after a couple weeks," receiving another on the left side. *Id.* Petitioner stated that "since the injection on the right side was given, he has been having pain, difficulty lifting the arm, cannot sleep very well, and is affecting his quality of life." *Id.* Dr. Yusaf agreed to order an MRI, even though he did not believe that a vaccination could affect the shoulder joint. *Id.* at 16. Petitioner underwent the MRI on March 17, 2022. *Id.* at 29.

Petitioner saw Dr. Yusaf again on March 31, 2022. Ex. 3 at 13. Dr. Yusaf reviewed Petitioner's MRI results and stated that Petitioner had a partial tear of the rotator cuff (more than 50%), a partial biceps tendon tear, and early degenerative changes. *Id.* at 14. Dr. Yusaf opined that most of Petitioner's problem was coming from the rotator cuff tear – a "separate problem" from soft tissue pain caused by the vaccination. *Id.* Dr. Yusaf recommended that Petitioner have a further evaluation for orthopedic surgery. *Id.*

On April 25, 2022, Petitioner had an appointment with orthopedic surgeon Dr. Nathan Krebs. Ex. 3 at 11. Petitioner stated that his injury was "from a vaccine injection on November 5, 2021" and that the pain began "in November 2021."[5] *Id.* at 11. Further, "[s]ince that time, he has had significant pain and disability of the right shoulder." *Id.* The onset of the pain was "sudden." *Id.*

Like Dr. Yusaf, Dr. Krebs believed that Petitioner had two separate problems – a "history of possible vaccine site reaction" that was "not related to the intra-articular pathology of his right shoulder that was identified [on the] MRI." Ex. 3 at 12. Dr. Krebs felt that it could be a coincidence that Petitioner's symptoms from both conditions started at the same time or that "vaccine irritation of the deltoid" caused Petitioner to move his shoulder differently and aggravate the underlying pathology. *Id.* Petitioner decided to forego any further conservative treatment and proceed to surgery. *Id.*

On May 17, 2022, Petitioner underwent right shoulder surgery. Ex. 3 at 20. Dr. Krebs performed a right shoulder arthroscopy with extensive debridement, release of

---

Petitioner received the flu and pneumococcal vaccines on November 6, 2021.

[5] Dr. Krebs stated that Petitioner associated this pain with receiving a COVID-19 vaccine in his right shoulder. Ex. 3 at 11. However, there is no evidence that Petitioner actually received a COVID-19 vaccine in November 2021 or at any other time. In fact, on May 10, 2022, Dr. Shetlar's office made a note of a call from Petitioner in which he described COVID-19 symptoms and discussed that he had not been vaccinated for the virus. Ex. 2 at 59. It is thus unclear why Dr. Krebs wrote that Petitioner attributed his right shoulder pain to the COVID-19 vaccine.

subdeltoid and subacromial adhesions, open biceps tenodesis, subacromial decompression, and rotator cuff repair of the subscapularis and supraspinatus tendons. *Id.* Petitioner then participated in 17 post-surgery PT sessions. *See id.* at 18; Ex. 4 at 22-57. Petitioner met all of his therapy goals and was discharged on August 4, 2022. Ex. 4 at 22.

## III.    Ruling on Entitlement

### A.    Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did

4

not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). A SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time-frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B.    Petitioner Has Established Onset by a Preponderance of the Evidence

The only Table element that Respondent disputes is onset. Rule 4(c) Report at 7-8; Resp't Br. at 9-10. Respondent objects that Petitioner did not use specific language indicating that his pain began within 48 hours of the November 6, 2021 vaccinations, but I do not find that his descriptions were too vague to establish entitlement. I have previously held in numerous decisions that a petitioner does not need to specifically state that his pain occurred within 48 hours, as long as there is no contrary evidence suggesting an onset *outside* of this window, and where the claimant otherwise attributes pain to the vaccination beginning around that time. Overall, Respondent fails to engage with what Petitioner actually stated to his treaters.

Petitioner made several complaints that can reasonably be read as connecting the November 6, 2021 vaccinations to immediate right shoulder pain. In particular, at the initial appointment with Dr. Shetlar on December 9, 2021, Petitioner reported that his arm had been painful *for the last month* after receiving the pneumococcal vaccine. *See* Ex. 2 at 58. Respondent points out that Petitioner did not specify which arm was painful or in which arm he received the vaccine. *See* Resp't Br. at 2. Nonetheless, context, and the vaccination record, which Respondent does not challenge, fills in this gap.

Respondent's other arguments are not persuasive. Respondent takes issue with the use of the word "since" from the March 8, 2022 appointment with Dr. Yusaf. Resp't Br. at 9. However, this is a common way that petitioners describe pain that begins shortly after a vaccination. Respondent further argues that Petitioner placed onset prior to

vaccination, when he stated that the pain began "around 5 months ago," but the vaccination was four months earlier. *Id.* Given that Respondent admits that Petitioner did not have any pre-existing injury, this argument falls flat. *See* Rule 4(c) Report at 2. The more reasonable explanation is that Petitioner incorrectly estimated the amount of time that had passed since the date of vaccination, or misstated the date.[6] Therefore, Respondent incorrectly contends that the only evidence of a 48-hour onset is Petitioner's declaration. *See* Resp't Br. at 7 (citing Ex. 5 at 1).

As I noted at the expedited hearing, although this case involved surgery, compensation for pain and suffering below $100,000.00 would be reasonable, and I would not expect compensation to exceed $110,000.00. Significantly, Petitioner's orthopedists attributed much of his symptoms to non-SIRVA comorbidities. Petitioner also experienced a relatively short course of treatment and did not attempt intensive non-surgical treatment. The parties should endeavor to settle the claim along those lines.

### Conclusion and Scheduling Order

Respondent does not raise any other objections to entitlement. *See generally* Rule 4(c) Report. Based on my independent review, I find that Petitioner has preponderantly established all requirements for a Table SIRVA claim. 42 C.F.R. § 100.3(c)(10). Accordingly, he need not prove causation-in-fact. Section 11(c)(1)(C). I also find that Petitioner has satisfied all other statutory requirements. Section 11(c)(A), (B), and (D).

For the foregoing reasons, **I find that Petitioner has established entitlement and is thus entitled to compensation for a right-sided Table SIRVA following the November 6, 2021 flu and pneumococcal vaccine administration.**

The case is now formally in the damages phase. The parties are encouraged to pursue informal resolution of an appropriate damages award. If the parties determine that informal resolution is not possible, they should be prepared to promptly brief the appropriate award of damages.

---

[6] Petitioner also introduced some confusion by describing a separate left arm vaccination and injury, but this does not take away from his right arm complaints.

8

**By no later than Tuesday, March 24, 2026**, Petitioner shall file a Status Report updating me on the parties' efforts towards informally resolving damages.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master